UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
ZURICH AMERICAN INSURANCE         :
COMPANY,                          :
ACE AMERICAN INSURANCE            :
COMPANY,                          :
WESTPORT INSURANCE, and           :
IRONSHORE SPECIALTY INSURANCE     :
COMPANY,                          :
                                  :
     Plaintiffs,                  :
                                  :
v.                                :   Case No. 3:20-cv-1779(RNC)
                                  :
NAES Corporation,                 :
                                  :
     Defendant.                   :
```

RULING AND ORDER

Materials Innovation and Recycling Authority (MIRA), successor to the Connecticut Resources Recovery Authority (CRRA), brought this case in state court against NAES Corporation ("NAES") seeking compensation for losses allegedly caused by NAES's gross negligence in operating a waste-to-energy facility owned by MIRA ("the Facility").  Joined as plaintiffs in the state court suit were MIRA's insurers - Zurich American Insurance Company, Ace American Insurance Company, Westport Insurance, and Ironshore Specialty Insurance Company - each of which sued as a subrogee of MIRA seeking to recover for sums paid to MIRA under property insurance policies covering the Facility.  NAES removed the case based on diversity jurisdiction.  MIRA has settled with NAES but the insurers'

1

claims remain pending.  The insurers seek to recover a total of $8,016,250.  NAES has moved for summary judgment on the basis of a waiver of subrogation provision in the underlying contract between CRRA and NAES pursuant to which NAES operated the Facility.  The insurers contend that the subrogation waiver does not extend to losses caused by NAES's gross negligence.  I think the subrogation waiver bars the insurers' claims as a matter of law and therefore grant the motion for summary judgment.

The contract between CRRA and NAES contains the following provision:

17.9 CRRA Insurance

CRRA shall provide and maintain reasonable and customary property insurance covering the Facility. CRRA shall waive and shall require its insurers to waive all subrogation rights against NAES and its directors, employees, representatives, agents, successors, assigns, and subcontractors for losses and damages incurred and paid under such policies.

ECF No. 40-1 at 2.

NAES submits that the phrase "all subrogation rights" means just that.  I agree.  The ordinary meaning of the word "all" is "the whole of," Black's Law Dictionary, (6th 3d. 1990); "every," Merriam Webster's Collegiate Dictionary (10th ed. 1993); and "any whatsoever."  The American Heritage College Dictionary (3d ed. 1993).  The insurers do not suggest that the word has a different meaning in this context.  Giving "all" its ordinary

meaning, the subrogation waiver encompasses the subrogation rights at issue.

The insurers contend that the subrogation waiver, read in the context of the contract as a whole, does not apply to subrogation rights arising from losses caused by NAES's gross negligence.  They rely on the following sections of the contract that refer to MIRA's right to recover from NAES for losses caused by NAES's gross negligence:

Section 18.3 Property Damage

In the event of a claim under a CRRA insurance policy for damage to the Facility that is attributable to NAES's negligence, NAES shall be liable for the payment of any deductible; provided that the claim exceeds the deductible amount for that policy and provided further that NAES's liability herein shall be limited to twice the annual fixed fee as this fee is determined in Schedule 14.2.  Without limitation of NAES's indemnification obligations pursuant to Section 18.1 hereof, NAES shall indemnify and reimburse CRRA for any and all damage to real or personal property of CRRA caused by Grossly Negligent acts of commission or omission by NAES, Recklessness, Willful Misconduct, willful violation of any Applicable law or NAES's Grossly Negligent oversight and management of any Subcontractor or any Capital Project Contractor.  CRRA shall give prompt notice to NAES of any damage resulting from such acts requiring such reimbursement.

And

Section 18.7 Limitation of Liability

Excluding NAES's liability for payment of amounts for which NAES is liable pursuant to Section 18.1 for injury to or death of Third Parties (including employee of NAES and CRRA) and damage to property of Third Parties, and any damages or liability arising from NAES's Gross Negligence . . .  Recklessness or

3

Willful Misconduct, NAES's total liability to CRRA for
claims of any kind . . . for all losses or damages
arising out of, connected with, or resulting from this
Agreement or from the performance or breach thereof,
or from any Services covered by or furnished during
the Term of this Agreement, shall in no case exceed
during any Operating Year, twice the annual fixed fee
as this fee is determined in Schedule 14.2, plus all
insurance proceeds received or receivable with respect
to the relevant loss or damages.

The insurers contend that because these provisions make
NAES liable to MIRA for damages caused by gross negligence, the
subrogation waiver should be construed as if it read:

"CRRA will waive and will require its [property] insurers
to waive all subrogation rights against NAES . . . for losses
and damages incurred and paid under such policies, *except losses
and damages caused by NAES's gross negligence*."

It is axiomatic that the terms of a contract should be
interpreted in light of the contract as a whole.  However, this
axiom does not permit the court to rewrite an unambiguous
provision in the guise of interpretation.  Rather, a provision
must be enforced in accordance with its plain terms unless other
provisions require a different interpretation.  The insurers
have not shown that the provisions they rely on require
the subrogation waiver to be interpreted as they suggest.

The insurers appear to assume that there is a conflict
between CRRA's contractual waiver of all subrogation rights
against NAES and the provisions of the contract entitling CRRA

4

to seek reimbursement from NAES for losses caused by gross negligence, and that this conflict is sufficiently serious to create an ambiguity regarding the scope of CRRA's waiver of "all subrogation rights." After careful consideration, I fail to see any such conflict.

Construing the subrogation waiver in light of the contract as a whole, it serves to protect NAES against liability for damage to the Facility covered by property insurance policies without regard to whether NAES might have been negligent or even grossly negligent in causing the damage. In effect, it protects NAES with regard to damage to the Facility as if it were also a named insured. Under the other provisions of the contract on which the insurers rely, CRRA could still seek reimbursement from NAES for damage to the Facility caused by NEAS's gross negligence, but only if and to the extent the damage was not covered by property insurance. This interpretation of the contract gives effect to the plain terms of the subrogation waiver as well as the other provisions.

The insurers seem to suggest that the Connecticut Supreme Court would not look favorably on a subrogation waiver with regard to claims for gross negligence. No case on point has been cited or found but other courts have concluded that such waivers are to be encouraged because they enable parties to avoid costly litigation. See St. Paul Fire and Marine Ins. Co.

v. Universal Builders Supply, Inc., 317 F. Supp. 2d 336, 341-42
(S.D.N.Y. 2004), aff'd 409 F.3 d 73, 84 (2d Cir. 2005) (New York
law); Lexington Ins. Co. v. Entrex Communication Services, Inc.,
275 Neb. 702, 711 (2008) (public policy favors enforcement of
waivers of subrogation even in the face of claims of gross
negligence).  I think the Connecticut Supreme Court would agree
with the reasoning in these cases.

The provisions of the contract in this case strongly
suggest that the parties intended to avoid costly disputes
regarding damage to the Facility through the use of insurance
and waivers of subrogation.  There is no allegation or evidence
that they had a different intention.  Permitting the insurers to
proceed against NAES would frustrate this intention by
embroiling the parties in litigation over whether NAES was or
was not negligent.  Enforcing the subrogation waiver in
accordance with its plain terms avoids this result.

Accordingly, the motion for summary judgment is hereby
granted.  The Clerk may enter judgment and close the file.

So ordered this 31st day of March 2025.

/RNC/
_____

Robert N. Chatigny
United States District Judge